**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No.**: 9:25-CV-80259

| | |
|---|---|
| JOSÉ ADRIAN HERNÁNDEZ CORREA, <br><br>             Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., SANTANDER CONSUMER USA INC., <br><br>         Defendants. | **COMPLAINT AND** <br> **JURY TRIAL DEMANDED** |

## COMPLAINT

José Adrian Hernández Correa ("Plaintiff" or "Mr. Correa") brings this action on an individual basis, against Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") and Santander Consumer USA Inc. ("Defendant Santander" or "Santander") (collectively "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff, an identity theft victim, brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et. seq.

2.      More than twenty million people, just under 10% of all adult Americans, are victims of identity theft each year.[1] Federal Law requires that each consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests.  This lawsuit arises from Defendant's refusal to comply

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics.  April 2021, NCJ 256085.

with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Experian acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

5.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

*Jose Adrian Hernandez Correa v. Experian Information Solutions Inc., et. al.*
COMPLAINT

7.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

9.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate

*Jose Adrian Hernandez Correa v. Experian Information Solutions Inc., et. al.*
COMPLAINT

information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

11.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." See 15 U. S.C. § 1681(a)(4).

12.     The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

13.     Plaintiff's claims arise out of the Defendants plainly deficient reinvestigations considering Plaintiff's multiple disputes and repeated notice that he was a victim of identity theft.

14.     Accordingly, Plaintiff brings claims against Experian for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i, and for failing to block the identity theft items as disputed and supported by Plaintiff in violation of the FCRA, 15 U.S.C. § 1681c-2.

15.     Further, Plaintiff also brings claims against the Furnisher, Santander, for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed

information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

16.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as described herein.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. See 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

19.     José Adrian Hernández Correa ("Plaintiff" or "Mr. Correa") is a natural person residing in West Palm Beach, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

20.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation with a principal place of business located at 475 Anton Boulevard Costa Mesa, California, and is authorized to do business in the State of Florida, including within this District. Experian can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard, Glendale, California 91203.

21.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning

*Jose Adrian Hernandez Correa v. Experian Information Solutions Inc., et. al.*
COMPLAINT

consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

22.    The information that Defendant Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Defendant Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

23.    Defendant Santander Consumer USA Inc. ("Santander") is a formed in Illinois corporation with a principal place of business located at 1601 Elm Street Suite 800 Dallas, TX 75201, and is authorized to do business in the State of Florida, including within this District. Defendant Santander can be served through its registered agent C T Corporation System located at 1200 South Pine Island Rode, Plantation, FL, 33324.

24.    Santander is a "Furnisher" as defined in 12 CFR 1022.41. Santander regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report. A data furnisher, such as Santander, is an entity that reports information about consumers to consumer reporting agencies (CRAs), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc.  Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. §1681s-2b of the FCRA.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

25.    The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

26.    The FCRA was designed to protect consumers from the harmful effects of

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT

inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681(a).

27.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  See 15 U.S.C. § 1681(b).

28.     Congress also recognized that CRAs such as Experian and non-parties Equifax and Trans Union "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3).  Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

29.     For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

30.     The first form of protection is the "block."  When a consumer identifies any information in their credit file that is the product of identity theft, the CRA must block (delete) the reporting of that information within four business days, provided the consumer submits:

a.  Appropriate proof of the identity of the consumer;

b.  A copy of an identity theft report;

c.  The identification of such information by the consumer; and,

d.  A statement by the consumer that the information is not information relating to any

transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).

31.     The second form of protection the FCRA provides for identity theft victims is the "fraud alert."

32.     Specifically, upon request of the consumer, a CRA must place an "initial fraud alert" in the file of that consumer, and provide that alert along with any credit score generated in using that file, for one year beginning on the date of the request.  Unless one year has passed, the CRA can only remove the alert if the consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15 U.S.C. § 1681c-1(a)(1).

33.     The third form of protection the FCRA provides for identity theft victims is a "security freeze," which a consumer can request from nationwide CRAs such as Experian here.

34.     A security freeze prohibits a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.[2] 15 U.S.C. § 1681c-1(i)(1).  Stated otherwise, if a consumer's report is frozen, a CRA will not be able to sell it to creditors assessing credit applications from identity thieves using an affected consumer's identity.

35.     Once placed, a security freeze does not expire.  A CRA can remove a security freeze **only** at "the direct request of the consumer," or if it finds that the freeze "was placed due to a material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A).  Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze."  15 U.S.C. § 1681c-1(i)(3)(C).

36.     The fourth and final form of protection the FCRA provides for identity theft victims

---

[2] Certain statutorily exempt entities can still request and receive a frozen report.  See 15 U.S.C. § 1681c-1(i)(4).  But those exemptions do not apply to the matter at hand.

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT

is that even in the absence of a security freeze, a CRA may only release a consumer report to a

person "which it has reason to believe...intends to use the information in connection with a credit

transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. §

1681b(a). When a credit transaction is not initiated by the consumer, a CRA may **only** release the

consumer's report with the consumer's authorization or if the user is making a firm offer of credit.

15 U.S.C. § 1681b(c).  No consumer reporting agency may furnish a consumer report to any person

if it has reasonable grounds for believing that the consumer report will not be used for a permissible

purpose.  15 U.S.C. § 1681e(a).

37.     To that end, the FCRA imposes the following twin duties on consumer reporting

agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to

ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C.

§ 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances

surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

38.     Similarly, the FCRA also imposes a duty upon the Furnisher, such as Santander, to

reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any

inaccuracies. (15 U.S.C. § 1681s-2b).

39.     The FCRA provides consumers with a private right of action against consumer

reporting agencies, such as the CRA Defendants, and data furnishers such as Santander, that

willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Identity Theft—Plaintiff Learns of the Fraudulent Santander Auto Loan Account

40.     Plaintiff came to the United States from Cuba in 2021 in search of a better life. In

or around June 2021 Plaintiff received his Social Security Number. Ever since Plaintiff migrated

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT

to the United Stated, he has only lived in Florida.

41.     In or around February 2024, Plaintiff sought to exchange his vehicle and purchase another Kia from a Kia dealership, but ultimately decided not to proceed with the transaction because the vehicle was too small to accommodate his family. Instead, Plaintiff opted to exchange his current vehicle and purchase another from a Toyota dealership, securing financing through Capital One Auto Finance.

42.     Thereafter, in or around March 2024, Plaintiff received a notification from Credit Karma that his credit score went down and learned that a second auto loan had been opened with Santander Consumer USA (the "Fraudulent Account").

43.     Plaintiff was shocked and confused because he only obtained one auto loan through Capital One Auto Finance and does not have any outstanding loans from Santander.

44.     In or around March 2024, Plaintiff obtained a copy of his Experian consumer file from Experian and, upon review, saw that the Fraudulent Account was reporting to his consumer files and reports.

45.     The Fraudulent Account Appeared in Plaintiff's Experian consumer file as follows:

   a.  Santander Consumer USA
       Partial Account Number: 3000027643396xxxxxxxxxxx
       Date Opened: February 2024
       Original Balance: $22,948.00

46.     Plaintiff has never borrowed from Santander.

47.     Plaintiff has never purchased a car by obtaining an auto loan from Santander.

48.     Plaintiff did not initiate, authorize, or benefit from the auto loan with Santander.

49.     After learning about the Fraudulent Account, Plaintiff contacted the Social Security Administration ("SSA") to open a case and inform the SSA that someone was using his SSN.

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT

50.     Furthermore, after reviewing his credit report, Plaintiff went to his local police department to file a police report (the "First Police Report").

**Plaintiff Disputes Directly with Defendant Santander**

51.     In or around April 2024, Plaintiff called Santander to dispute the Fraudulent Account and informed them that the account was fraudulent and that he did not borrow those funds.

52.     Plaintiff spoke to a Santander representative and informed them that the Fraudulent Account was not his and that he did not borrow funds to purchase a 2017 Kia Sorento.

53.     Plaintiff disputed the Fraudulent Account with Santander as the product of fraud and identity theft.

54.     Plaintiff provided the First Police Report via fax and email, and provided the SSA case number.

55.     During that call, Plaintiff discovered that the email address associated with the Fraudulent Account was danieldelgado2316@hotmail.com. Plaintiff has never used the foregoing email address, and the foregoing email address is not Plaintiff's.

56.     During that same call, Plaintiff also discovered that the mailing address associated with the Fraudulent Account was one that he never used or lived at.

57.     Thereafter, Santander denied Plaintiff dispute and asserted that Plaintiff was responsible for the Fraudulent Account because the personal identifiers matched, ignoring Plaintiff's contention that his identity was stolen.

**Plaintiff Disputes the Fraudulent Account with Experian April 2024**

58.     Concerned that Santander would continue to report inaccurately to one or more consumer reporting agencies that Plaintiff was responsible for the approximately $22,000.00 Fraudulent Account, Plaintiff determined that he needed to escalate the issue to prevent further damage to his credit files and reports.

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT

59.     In or around September 2024, Plaintiff called Experian to dispute the Fraudulent Account ("First Dispute"). Specifically, Plaintiff disputed that the Fraudulent Account was not his, but rather the product of fraud and identity theft.

60.     Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

61.     Plaintiff requested that the identity theft information be blocked and/or removed from his credit file.

### Experian's Method for Considering Consumer Credit Report Disputes

62.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

63.     The credit bureaus, Experian and non-parties Equifax, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance.  e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

64.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

65.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

66.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

67.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

68.     ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

69.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

70.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

71.     The data furnishers, like Santander, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

72.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Experian's Unreasonable Dispute Reinvestigation May 2024**

73.     In or around April 2024, Defendant Experian received Plaintiff's dispute and request that the identity theft information be blocked from his credit file.

74.     Upon information and belief, Experian sent Santander an ACDV pursuant to Plaintiff's First Dispute to Experian.

75.     In or around May 2024, Experian sent the dispute results to Plaintiff in connection with Plaintiff's First Dispute. Experian's dispute results demonstrated that Santander had certified to Experian that the Fraudulent Account was accurate.

76.     Thereafter, the Fraudulent Account was not removed or blocked from Plaintiff's credit file.

77.     Upon information and belief, Defendant Santander received Defendant Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

78.     Upon information and belief, Experian did not conduct an independent investigation and merely parroted the information it received from Santander.

79.     Experian failed to reasonably reinvestigate Plaintiff's First Dispute and failed to block the identity theft information.

80.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Santander's Unreasonable Dispute Investigation May 2024**

81.     Upon information and belief, Santander failed to adequately review all of the information provided to it by Plaintiff in Plaintiff's First Dispute.

82.     Upon information and belief, despite Plaintiff's earlier direct dispute with Santander, Santander verified the disputed information as accurate in response to Experian's ACDV.

83.     Santander violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Account was the product of

identity theft.

**Plaintiff Disputes the Fraudulent Account with Experian October 2024**

84.     Concerned that Santander would continue to report inaccurately to one or more consumer reporting agencies that Plaintiff was responsible for the approximately $22,000.00 Fraudulent Account, Plaintiff determined that he needed to escalate the issue to prevent further damage to his credit files and reports.

85.     On or about September 12, 2024, Plaintiff filed a police report at the Palm Beach County Sheriff's Office (the "Second Police Report").

86.     Shortly thereafter, Plaintiff called Experian to dispute the Fraudulent Account ("Second Dispute"). Specifically, Plaintiff disputed that the Fraudulent Account was not his, but rather the product of fraud and identity theft.

87.     Plaintiff provided the police report number in connection with the Second Police Report and provided sufficient information to identify his credit file and sufficient information to support his dispute.

88.     Plaintiff requested that the identity theft information be blocked and/or removed from his credit file.

**Defendant Experian's Unreasonable Dispute Reinvestigation October 2024**

89.     In or around September 2024, Defendant Experian received Plaintiff's dispute and request that the identity theft information be blocked from his credit file.

90.     Upon information and belief, Experian sent Santander an ACDV pursuant to Plaintiff's Second Dispute to Experian.

91.     On or about October 7, 2024, Experian sent the dispute results to Plaintiff in connection with Plaintiff's Second Dispute. Experian's dispute results demonstrated that Santander had certified to Experian that the Fraudulent Account was accurate.

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT

92.     Thereafter, the Fraudulent Account was not removed or blocked from Plaintiff's credit file.

93.     Upon information and belief, Defendant Santander received Defendant Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

94.     Upon information and belief, Experian did not conduct an independent investigation and merely parroted the information it received from Santander.

95.     Experian failed to reasonably reinvestigate Plaintiff's First Dispute and failed to block the identity theft information.

96.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Santander's Unreasonable Dispute Investigation October 2024**

97.     Upon information and belief, Santander failed to adequately review all of the information provided to it by Plaintiff in Plaintiff's Second Dispute.

98.     Upon information and belief, despite Plaintiff's earlier direct dispute with Santander, Santander verified the disputed information as accurate in response to Experian's ACDV.

99.     Santander violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed Fraudulent Account was the product of identity theft.

**Plaintiff's Dispute to Experian November 2024**

100.     Upset that his disputes were not taken seriously and concerned that eventually someone might seek to collect the approximately $22,000.00 Fraudulent Account, and that the

continued reporting of the Fraudulent Account could jeopardize Plaintiff's access to credit or even lead to credit revocation, Plaintiff determined that he needed to dispute the Fraudulent Account again.

101.    Before sending another dispute, on or about October 31, 2024, Plaintiff filed an Identity Theft Report with the Federal Trade Commission (the "FTC Affidavit").

102.    On or about November 4, 2024, Plaintiff again disputed the Fraudulent Account with Experian ("Third Dispute"). Specifically, Plaintiff disputed that the Fraudulent Account was not his, but rather the product of fraud and identity theft.

103.    Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute, including, but not limited to, copies of the Police Report and FTC Affidavit.

104.    Plaintiff requested that the identity theft information be blocked from his credit file.

105.    Plaintiff sent the same disputes to non-parties Equifax, Trans Union and Innovis.

**Defendant Experian's Unreasonable Dispute Reinvestigation November 2024**

106.    Upon information and belief, on or about November 12, 2024, Experian received Plaintiff's Third Dispute wherein Plaintiff requested that identity theft information be blocked from his credit file.

107.    Upon information and belief, Experian failed to respond to Plaintiff's Third Dispute.

108.    Upon information and belief, Experian failed to send an ACDV to Santander in connection with Plaintiff's Third Dispute.

109.    Thereafter, on or about January 6, 2025, Plaintiff reviewed his Experian credit file and learned that Experian failed to remove the Fraudulent Account, as well as the addresses

associated with such account. Furthermore, there was no indication that the Fraudulent Account was disputed by Plaintiff in Plaintiff's Experian credit file.

110.    Upon information and belief, Experian continues to include the Fraudulent Account in Plaintiff's Experian credit file.

111.    Upon information and belief, Experian failed to reinvestigate Plaintiff's March 2024 dispute and failed to block the identity theft information.

112.    On the other hand, non-parties Equifax, Trans Union, and Innovis all removed the Fraudulent Account from Plaintiff's credit files.

113.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, failing to recognize that the disputed charges were the product of identity theft, and for failing to indicate that the Fraudulent Account was disputed in Plaintiff's credit file.

114.    Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Plaintiff Applies for an American Express Credit Card and is Denied**

115.    On or about January 25, 2025, Plaintiff applied for a credit card with American Express. Plaintiff and his family are living paycheck-to-paycheck, and the additional credit would help cover the cost of their living expenses.

116.    In order for American Express to make a determination on Plaintiff's credit application, it would need to obtain copies of Plaintiff's credit files.  Plaintiff provided American Express with his personal identification information, including his Social Security number, and authorized it to obtain his credit files.

117.    Upon information and belief, on or about January 25, 2025, Experian, in accordance with its standard procedures, sold a credit report to American Express in connection with Plaintiff's credit application.

118.    Shortly thereafter, Plaintiff received a notice from American Express denying his credit application.   American Express indicated Plaintiff's FICO Score was the reason for its decision. American Express specifically stated that "the ratio of revolving account balances to their credit limits is too high" and "there are too many consumer finance company loans."

119.    Upon information and belief, American Express denied Plaintiff's credit application due to Experian reporting of the Fraudulent Account on the consumer report it sold American Express concerning Plaintiff.

120.    Plaintiff was distressed and dismayed by the credit denial because he knew that the Fraudulent Account did not belong to him.

121.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**Plaintiff's Damages**

122.    Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

123.    Plaintiff disputed directly with Santander on multiple occasions and explained that the Fraudulent Account was fraudulently opened and that he was the victim of identity theft.

124.    Plaintiff filed a police report.

125.    Plaintiff filed an FTC ID Theft Report.

126.    Plaintiff disputed with Experian multiple times throughout 2024.

127. Plaintiff immediately identified himself as an identity theft victim and requested that Experian block and remove the account information that was the product of identity theft.

128. Experian failed to block the Fraudulent Account that was the product identity theft despite Plaintiff's multiple disputes.

129. Instead, Experian either disregarded Plaintiff's credible disputes or responded that the furnisher of the account that was the product of identity theft had verified the account as accurate.

130. Experian understands it is often the case that an identity thief's activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit file.

131. Despite Plaintiff's multiple disputes to Experian that the Santander Loan was the product of fraud, and that he was a victim of identity theft, Experian hardly waivered in its refusals to block the information.

132. Plaintiff reasonably believes that Santander verified the Fraudulent Account as accurate to Experian, inaccurately suggesting that Plaintiff was responsible for the Fraudulent Account.

133. As a direct result of Experian's ardent refusal to block the Fraudulent Account, which was a product of identity theft, Experian has continued to saddle Plaintiff with an open loan account that was the product of identity theft.

134. Further, as a direct result of Santander's verification of the disputed Fraudulent Account to Experian, Santander has continued to saddle Plaintiff with an open loan account which was the product of identity theft.

135. Due to Defendants' ardent refusals to comply with their respective obligations

pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

136.    Further, and due to Defendants' inexplicable refusal to block the Fraudulent Account from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendants Experian and Santander, repeatedly, to no avail.

137.    In addition, upon information and belief, due to Defendants' failure to block the Fraudulent Account from an identity theft victim's consumer file, Plaintiff's application from an American Express credit card was denied.

138.    Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes. The foregoing emotional distress suffered by Plaintiff resulted in damage to his eye. Plaintiff now needs medical treatment to his eye that he cannot afford.

139.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

140.    At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

141.    Plaintiff's feels ongoing stress and anxiety over the situation, which has affected him and his relationships negatively.

142.    Experian has a long history of disregarding the credit reporting rights of identity theft victims under the FCRA.  For example, in the very similar matter of <u>April Hendrix vs.</u>

<u>Equifax, et. al.</u>, (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including Experian, over their repeated wrongful removal of security freezes, release of her credit reports for impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on her credit reports.

143.   The Hendrix suit put Experian on notice several years ago that their respective policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

144.   Experian has had years of notice in the form of federal lawsuits, despite it all, Experian did not take any better steps to protect the Plaintiff here.

145.   The respective internal policies and procedures of Experian does not appear to place any value on its obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose. Nor does Experian's respective policies and procedures respect their statutory duties to enforce or at minimum add security freezes and fraud alerts as requested by the consumer.

146.   As a standard practice, Experian does not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the data furnishers, like Defendant Santander here, despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs*., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit

reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

147.    Experian is aware of the shortcomings of its procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, Experian's violations of the FCRA are willful.

148.    Experian's policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

149.    As a result of Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

150.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(First Claim Against Defendant Experian)**

151.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as

though fully set forth herein.

152.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

153.    On at least one occasion, Experian prepared patently false consumer reports concerning Plaintiff.

154.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, Experian readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness on at least one occasion.

155.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

156.    As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

157.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

158.    Defendant Experian's conduct, actions, and inactions were willful, rendering Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

159.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim Against Defendant Experian)**

160.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

161.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. Id.

162.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

163.    On numerous occasions in 2024, Plaintiff disputed the inaccurate information with Defendant Experian and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the Fraudulent Account that was the product of identity theft which was a very stressful situation for the Plaintiff.

164.    Plaintiff disputed the identity theft information to Defendant Experian several times

to no avail.

165.    On at least one occasion, Plaintiff supported his dispute with a copy of the police report and the FTC ID Theft Report.

166.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

167.    Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with Defendant Experian, repeatedly.

168.    Defendant Experian's repeated refusals to block the disputed Fraudulent Account provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

169.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

170.    As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan

account that was the product of identity theft.

171.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendant Experian.

172.   Defendant Experian's conduct, actions, and inactions were willful, rendering the Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

173.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Third Claim Against Experian)

174.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

175.   Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

176.   Plaintiff submitted ample evidence of the fact that he was an identity theft victim. Plaintiff further supported the fact that he was an identity theft victim by providing Defendant Experian copies of the Police Report and FTC IDT Report.

177.   Defendant Experian should have blocked the identity theft information but failed to do so at every turn.

*Jose Adrian Hernandez Correa v. Experian
Information Solutions Inc., et. al.*
COMPLAINT

178.     As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

179.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendant Experian.

180.     Defendant Experian's conduct, actions, and inactions were willful, rendering Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

181.     Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review of all**
**Relevant Information Provided by the Consumer**
**(First Claim Against Santander)**

182.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

183.     Defendant Santander refused to remove information that was the product of identity theft—namely the Fraudulent Account.

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT

184.     Defendant Santander violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same.

185.     As a result of Defendant Santander's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the an open and derogatory loan account that was the product of identity theft.

186.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendant Santander.

187.     Defendant Santander's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant Santander was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

188.     Plaintiff is entitled to recover attorneys' fees and costs from Defendant Santander in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(i)     Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

*Jose Adrian Hernandez Correa v. Experian Information Solutions Inc., et. al.*
COMPLAINT

(ii)    An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681,

et seq.;

(iii)   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n

and § 1681o; and,

(iv)   Such other and further relief as this Honorable Court may deem just and proper,

including any applicable pre-judgment and post-judgment interest, and/or

declaratory relief.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 24th day of February 2025

*/s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 715-1750-
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*José Adrian Hernández Correa*

*Jose Adrian Hernandez Correa v. Experian*
*Information Solutions Inc., et. al.*
COMPLAINT